RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GUY TURI; MELISSA BALISTRERI-TURI;
SHAUN NUGENT; CHRISTINE DENTON; LISA
WELLS; SAM WELLS; LINDA WOOD; GEORGE
WOOD; ALICE BUFFINGTON; DANIEL MCCOY;
KELLEEN URBON; TODD URBON,
            *Plaintiffs-Appellees,*

            *v.*

MAIN STREET ADOPTION SERVICES, LLP;
NINA HELLER; BOB MCCLENAGHAN,
            *Defendants-Appellants.*

> No. 09-2229

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-14511—David M. Lawson, District Judge.

Decided and Filed: March 4, 2011

Before: DAUGHTREY, GILMAN, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Mark R. Fox, FRASER TREBILCOCK DAVIS & DUNLAP, P.C.,
Lansing, Michigan, for Appellants. Joni M. Fixel, FIXEL LAW OFFICES, PLLC,
Okemos, Michigan, for Appellees.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Main Street Adoption Services, LLP
and two of its officers (collectively, Main Street), none of whom are residents of
Michigan, have filed this interlocutory appeal challenging the district court's conclusions
that (1) it has personal jurisdiction over Main Street regarding the various claims of the

1

Michigan plaintiffs, (2) venue is proper in the Eastern District of Michigan, and (3) the parties' arbitration clause in their adoption agreements does not foreclose litigating the present case in federal court.  For the reasons set forth below, we **DISMISS AS PREMATURE** Main Street's challenge to the rulings of the district court regarding personal jurisdiction and venue, **REVERSE** the judgment of the district court retaining subject-matter jurisdiction over the plaintiffs' fee-related claims (for unjust enrichment and for conversion), **AFFIRM** its judgment retaining subject-matter jurisdiction over the plaintiffs' remaining claims, and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

The plaintiffs (the appellees here) are 12 individuals who contacted Main Street for the purpose of adopting a child from Guatemala.  Main Street is a Pennsylvania entity that facilitates the adoption of foreign children.  In addition to Main Street, the other appellants in the present case are Main Street's Chief Executive Officer, President, and Director Nina Heller, a California resident, and its Director Bob McClenaghan, a Pennsylvania resident.

All 12 of the plaintiffs signed adoption agreements with Main Street to accomplish the adoptions in question.  None of the plaintiffs, however, ended up successfully completing an adoption through Main Street.  At the time the complaint was filed in the United States District Court for the Eastern District of Michigan, 10 of the 12 plaintiffs resided in states other than Michigan (the non-Michigan plaintiffs).  Only Daniel McCoy and Alice Buffington (the Michigan plaintiffs) were residents of Michigan.  The Michigan plaintiffs had numerous communications with Main Street regarding their respective adoption agreements.  Most of these communications were initiated by the Michigan plaintiffs, but some were initiated by Main Street.  These communications concerned logistical issues related to the adoption process and various concerns that the Michigan plaintiffs had over the course of their attempted adoptions.  All of the plaintiffs claim that they "were induced into an adoption that never took place due to [Main Street's] incompetence . . . [,] assurances, unethical behavior, lack of

monitoring and misrepresentations." They assert that Main Street's various factual representations regarding the adoption process were dishonest and form the basis for Main Street's alleged fraud.

The plaintiffs argue that personal jurisdiction over Main Street is proper in Michigan because of the communications between the Michigan plaintiffs and Main Street. Although the plaintiffs concede in their brief that the non-Michigan plaintiffs "had no contact with [the Eastern District of Michigan], and [Main Street] committed no acts that independently justify the exercise of limited personal jurisdiction in Michigan with respect to th[e] claims" of the non-Michigan plaintiffs, they contend that the contacts between the Michigan plaintiffs and Main Street justify the exercise of personal jurisdiction over Main Street in Michigan for all of the plaintiffs' claims. The plaintiffs also argue that venue is proper in the Eastern District of Michigan because that venue has a substantial connection to their claims.

All 12 plaintiffs collectively filed a complaint in the Eastern District of Michigan, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1962(c) and 1962(d)), as well as state-law claims for unjust enrichment, conversion, civil conspiracy, fraudulent misrepresentation, innocent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Main Street responded by filing a motion to dismiss the complaint, arguing that the district court lacked personal jurisdiction over the defendants, that the venue was improper, and that all of the claims should be referred to an arbitrator pursuant to the arbitration clause in the parties' adoption agreements. The district court granted in part and denied in part Main Street's motion to dismiss, finding that: (1) the record supported personal jurisdiction over the Main Street defendants regarding the claims raised by the Michigan plaintiffs; (2) there was no personal jurisdiction over the Main Street defendants regarding the claims raised by the non-Michigan plaintiffs; (3) venue was proper in the Eastern District of Michigan; and (4) the claims in the complaint did not fall within the scope of the arbitration clause in

the parties' adoption agreements.  This timely interlocutory appeal by Main Street followed.

## II.    JURISDICTION

"Although the parties did not raise the issue of appellate jurisdiction in their briefs, we are under an independent obligation to police our own jurisdiction, and thus we can raise the issue of jurisdiction sua sponte."  *See Bonner v. Perry*, 564 F.3d 424, 426 (6th Cir. 2009) (internal quotation marks omitted).  "With certain limited exceptions not applicable here, we have jurisdiction only over appeals from final decisions of a district court."  *Id.* at 426-27 (citing 28 U.S.C. § 1291).  "Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature."  *Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 866 (6th Cir. 2000) (internal quotation marks omitted).

### A.    Appellate jurisdiction over the denial of Main Street's arbitration claim

The district court's denial of Main Street's motion to dismiss, which was based on the parties' arbitration clause, is independently reviewable under the Federal Arbitration Act (FAA), 9 U.S.C. § 16, and Rule 4 of the Federal Rules of Appellate Procedure.  *See Simon v. Pfizer Inc.*, 398 F.3d 765, 772-73 (6th Cir. 2005) (holding that there was jurisdiction under the FAA to hear the defendant's interlocutory appeal of the district court's denial of the defendant's motion to dismiss).  Such interlocutory appellate jurisdiction comports with the principle that we generally have jurisdiction only over final orders because "the FAA's provision for interlocutory appeals from refusals to stay an action or compel arbitration was intended precisely to" support a party's "contractual right to resolve [certain] questions through arbitration and avoid [court] proceeding[s] altogether."  *Stein v. KPMG, LLP*, 486 F.3d 753, 762 (2d Cir. 2007).  We thus have jurisdiction to review the district court's denial of Main Street's claim that this action should be decided by arbitration.

**B.      Appellate jurisdiction over Main Street's personal-jurisdiction and venue defenses**

Whether we have interlocutory jurisdiction over the district court's denial of Main Street's personal-jurisdiction and venue defenses is another matter. Interlocutory appeals may be heard where the issue being raised falls under the collateral-order doctrine or if the issue is "inextricably intertwined" with another issue that the appellate court has the independent jurisdiction to consider. *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 323 (6th Cir. 2010) (holding that the court lacked jurisdiction over the defendant's appeal from the district court's denial of various defenses raised in the defendant's motion for summary judgment because the issues on appeal "do not fall under the collateral order doctrine nor are they inextricably intertwined with the [immediately appealable] issue of sovereign immunity"). As discussed below, neither of these principles is applicable to the facts in the present case. Nor are the statutory provisions setting out the narrow scope of interlocutory appellate jurisdiction in the federal courts applicable. *See* 28 U.S.C. § 1292(a) (granting interlocutory appellate jurisdiction over certain decisions regarding injunctions, receivers, and admiralty cases).

*1.      The collateral-order doctrine*

"The collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). Under this doctrine, appeals are permitted "not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.*

A claim that the trial court lacks personal jurisdiction over the defendant can be vindicated on appeal after trial, and thus does not satisfy the third prong of the collateral-order doctrine. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989) (holding that a claimed right to be sued in a particular forum based on a forum-selection clause is "surely as effectively vindicable as a claim that the trial court lacked personal jurisdiction over the defendant—and hence does not fall within the third prong of the collateral order doctrine"). Unlike a claim of sovereign immunity, which is immediately appealable under the collateral-order doctrine because it is a claimed immunity from the obligation to stand trial, *see Lowe*, 610 F.3d at 323, a claim that the district court lacks personal jurisdiction is simply a claimed right to not be sued in a particular forum, and is therefore not immediately appealable. *Lauro Lines s.r.l.*, 490 U.S. at 501; *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667 (6th Cir. 2005) (holding that the issue of personal jurisdiction deals with "amenability to suit in a particular forum").

Interlocutory challenges to a district court's denial of a motion to dismiss for improper venue are also not immediately appealable. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 764 (6th Cir. 1985) (en banc) (holding that appeals regarding denials of appointment-of-counsel motions in a class action were not immediately appealable under the collateral-order doctrine because, similar to "interlocutory orders in ordinary litigation—[including] rulings on . . . venue," such orders are nonfinal). Our sister circuits have similarly held that orders determining that venue, or a particular forum, is proper are not immediately appealable because they are "effectively reviewable after entry of judgment." *See United States v. Snipes*, 512 F.3d 1301, 1301-02 (11th Cir. 2008) (holding that "an order pertaining to venue in a criminal case" is not immediately appealable under the collateral-order doctrine); *U.S. Tour Operators Ass'n v. Trans World Airlines, Inc.*, 556 F.2d 126, 129 (2d Cir. 1977) (holding that "preliminary rulings establishing the forum are not appealable, even though postponing review forces the would-be appellant to litigate in the forum he seeks to avoid, and creates the risk that an entire proceeding will be rendered nugatory"). The

district court's denial of Main Street's motion to dismiss for lack of personal jurisdiction and improper venue thus does not fall under the collateral-order doctrine.

### 2.      *The inextricably-intertwined exception*

Even if claims are not reviewable under the collateral-order doctrine, they may still be reached on interlocutory appeal if they are inextricably intertwined with an independently appealable issue. *Lowe*, 610 F.3d at 323. Whereas the collateral-order doctrine establishes a category of claims that are considered final, the inextricably-intertwined rule—typically referred to as "pendent appellate jurisdiction"—provides an exception to the general rule that only final orders are immediately appealable. *See Summers v. Leis*, 368 F.3d 881, 889 (6th Cir. 2004) ("Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but, may be reviewed on interlocutory appeal if those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction.") Pendent appellate jurisdiction thus "allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable." *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 286-87 (6th Cir. 2010).

But "the 'inextricably intertwined' requirement is not meant to be loosely applied as a matter of discretion. Rather, the 'inextricably intertwined' requirement is satisfied only if the resolution of the properly appealable issue 'necessarily and unavoidably' decides the non-appealable issue." *Id.* at 287. A challenge to a nonfinal order, in other words, will be considered inextricably intertwined with a claim that is independently reviewable if the pendent claim is "coterminous with, or subsumed in, the claim before the court on interlocutory appeal." *Id.* (internal quotation marks omitted).

This court has not specifically dealt with whether personal-jurisdiction and venue determinations are inextricably intertwined with decisions concerning arbitrability. But our well-developed general standard for when pendent appellate jurisdiction applies readily resolves the present inquiry. Although resolution of the arbitration issue in the present case entails analyzing some of the same alleged interactions between Main Street

and the plaintiffs that are relevant to the personal-jurisdiction and venue issues, the geographic location of these interactions—which is essential to the personal-jurisdiction and venue determinations—is simply not relevant to the scope of the parties' arbitration clause. The resolution of whether the plaintiffs' claims must be arbitrated therefore does not "necessarily and unavoidably" resolve whether personal jurisdiction and venue are proper. *See Summers*, 368 F.3d at 889-90 (holding that pendent appellate jurisdiction over the appellant's *Younger*-abstention claim was not proper because the court's "review of whether the district court improperly denied Leis qualified immunity does not 'necessarily and unavoidably' resolve the *Younger* abstention issue" where the two issues involved "the application of separate and distinct legal standards").

"Pendent appellate jurisdiction may also be appropriate if review of the issue of which the court does not properly have jurisdiction is 'necessary to ensure meaningful review' of the issue of which the Court does." *Id.* at 890. The court in *Summers* held that "resolution of the *Younger* abstention issue is not critical because, even if the district court is required to abstain under *Younger* and dismiss the suit, such a result has no effect on whether Leis is entitled qualified immunity." *Id.* So too here, resolution of the personal-jurisdiction and venue issues is not critical to the arbitration issue because even if the district court is required to abstain from considering the plaintiffs' claims based on the fact that it lacks personal jurisdiction or because venue is improper, such a result has no effect on the merits of the separate determination of whether these claims are covered by the parties' arbitration clause.

The United States Court of Appeals for the Third Circuit has persuasively explained that whether a personal-jurisdiction defense will be considered inextricably intertwined with an arbitration claim depends on whether the personal jurisdiction issue is "interrelated or intertwined with the merits of the immediately appealable" arbitration order. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 204 (3d Cir. 2001) (internal quotation marks omitted). "Where personal jurisdiction is inextricably intertwined with the immediately appealable decision on a motion to compel arbitration . . . , Courts of Appeals have exercised

pendent jurisdiction over a personal jurisdiction issue, but those Courts have been careful to explain that the basis of the personal jurisdiction decision was identical to the basis of the immediately appealable order." *Id.* at 203-04.

These two issues have been considered inextricably intertwined, for example, where the parties' consent to arbitrate their claims itself forms the basis for exercising personal jurisdiction. *Id.* at 204 (citing *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 461-62 (5th Cir. 2001), and *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726-27 (8th Cir. 2001)). On the other hand, where "[t]he issue of personal jurisdiction does not have to be reviewed to exercise meaningful review of the immediately appealable arbitration issue, . . . we will not exercise pendent appellate jurisdiction" over the personal-jurisdiction issue. *E.I. DuPont*, 269 F.3d at 205.

As in *E.I. Dupont*, the personal-jurisdiction and venue determinations, as well as the geographic location of various conduct at issue in the present case, have nothing to do with whether the district court was foreclosed by the parties' arbitration clause from considering the plaintiffs' claims. *See also Simon v. Pfizer Inc.*, 398 F.3d 765, 772 n.9 (6th Cir. 2005) (holding that pendent appellate jurisdiction did not exist over the appellant's administrative-exhaustion claim because that claim was "not coterminous with, or subsumed in the arbitration issue" (internal quotation marks omitted)). The issues of whether personal jurisdiction exists regarding the Michigan plaintiffs' claims and whether venue is proper in the Eastern District of Michigan are therefore not inextricably intertwined with the arbitrability of the plaintiffs' claims.

### 3.    *Certification by the district court*

Our analysis is not altered by the fact that resolving Main Street's personal-jurisdiction or venue claims now might avoid further litigation on the merits of the plaintiffs' claims. *See Summers*, 368 F.3d at 889 (rejecting the concurrence's contention that the defendant's *Younger*-abstention claim should be heard on interlocutory appeal in the interest of judicial economy). This tension between avoiding delays caused by piecemeal appeals and taking shortcuts that might occasionally save time has already been addressed by Congress. The statute that sets out the narrow terms

of interlocutory appellate jurisdiction provides that if a district court certifies an otherwise nonappealable order, the court of appeals has the discretion to permit an appeal from that order. 28 U.S.C. § 1292(b) (stating that if a district court certifies an otherwise nonappealable order in a civil action because the court is of "the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the court of appeals may then, "in its discretion, permit an appeal to be taken from such order"). "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). Allowing appeals that are not independently appealable, that do not fit under the well-established exceptions to the final-judgment rule, or that were not certified by the district court, would "severely undermine[]" the "two-tiered arrangement [that] § 1292(b) mandates." *Id.* There has been no § 1292(b) certification in the present case.

**C.     Appellate jurisdiction over the non-Michigan plaintiffs' personal-jurisdiction claims**

The district court concluded that it did not have personal jurisdiction over Main Street regarding the claims that were raised by the non-Michigan plaintiffs and, accordingly, dismissed all of those claims. In their brief responding to Main Street's appeal, the plaintiffs argue that the district court erred in denying their motion for reconsideration and in refusing to allow the non-Michigan plaintiffs to intervene in the lawsuit. They argue that the Michigan plaintiffs' claims "emanate from the same nucleus of fact and are inextricably intertwined with [the claims of] the non-Michigan Plaintiffs." They further assert that (1) 28 U.S.C. § 1367 expressly authorizes the district court to hear the non-Michigan plaintiffs' claims as pendent to the Michigan plaintiffs' claims, (2) the non-Michigan plaintiffs are entitled to intervention as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, and (3) the non-Michigan plaintiffs have satisfied the requirements for permissive intervention under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure. The plaintiffs thus ask us to reverse the district court's decision excluding the non-Michigan plaintiffs or, in the alternative,

to "render a determination that the non-Michigan Plaintiffs are entitled to intervene" in the lawsuit. Main Street responds that the non-Michigan plaintiffs' claims are not properly before us because no plaintiff filed a proper cross-appeal.

"This court has held that the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary." *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993) (holding that because the defendant failed to file a cross-appeal regarding the district court's denial of his motion for a judgment notwithstanding the verdict in his first trial, his claim was not properly before the court on appeal); *see also Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008) (explaining that the cross-appeal rule is an "unwritten but longstanding rule" that "an appellate court may not alter a judgment to benefit a nonappealing party" because "it takes a cross-appeal to justify a remedy in favor of an appellee"). The plaintiffs' attorneys in the present case purport to represent all 12 original plaintiffs. But when the district court dismissed the non-Michigan plaintiffs' claims for lack of personal jurisdiction, it terminated all rights that the non-Michigan plaintiffs had in any further resolution of this case, including the venue and arbitration issues.

To the extent that the non-Michigan plaintiffs are asking us to reverse the district court's judgment regarding the dismissal of their claims or to hold that the non-Michigan plaintiffs are entitled to intervene in the action, they are seeking to enhance their rights. And the Michigan plaintiffs, to the extent that they bring these claims, are seeking to reduce Main Street's rights, even if the Michigan plaintiffs' own rights would not be enhanced.

The requirement to file a cross-appeal is thus mandatory, and the plaintiffs' failure to file a notice of cross-appeal divests us of jurisdiction to hear their claims. *See United States v. Neal*, 93 F.3d 219, 224 (6th Cir. 1996) (holding that because the defendant sought to enhance his rights by obtaining "more extensive relief than the district court ordered below," this court lacked jurisdiction over the claim in the absence of a cross-appeal); *S.E.C. v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984) (refusing to

consider the appellee's claim because "filing a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary" (citation omitted)).

## III.  ARBITRATION

We now turn to the parties' dispute regarding the scope of their arbitration clause.  The clause reads as follows:

> Any controversy or claim arising out of this agreement if less than or equal to $5,000 shall be resolved by an action in small claims court of the Municipal Court of the City of and County of Lancaster Pennsylvania. If a claim regarding fees charged by us exceeds $5,000, it shall be resolved by arbitration in the City of Lancaster Pennsylvania, administered by the American Arbitration Association in accordance with its Arbitration Rules for Adoption Agencies and Related Services Disputes, such arbitration shall be binding and final, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. In agreeing to arbitration, we both acknowledge that, in the event of a dispute over fees charged by us, each party is giving up the right to have the dispute decided in a court of law before a judge or jury and instead we are accepting the use of arbitration for resolution of this matter. In any such dispute, whether resolved by arbitration or lawsuit, the prevailing party will be entitled to attorney's fees and costs.

The district court explained that this arbitration clause "is not a broad provision compelling arbitration of any dispute arising out of the parties' relationship; instead, it is a specific, limited, and unambiguous provision restricted to a 'claim regarding fees charged by us' or 'a dispute over fees.'"  Because of the narrow nature of the parties' arbitration clause, the court reasoned that

> certainly the plaintiffs seek to recover fees paid, presumably in their unjust enrichment count, but they also allege fraud, conspiracy, misrepresentation, and violations of RICO, and they are claiming that the defendants' tortious conduct caused them injuries beyond the fees charged.  None of this can be characterized properly as "a claim regarding fees charged by us."

The district court thus concluded that the arbitration clause does not cover the plaintiffs' dispute with Main Street. We review de novo a district court's decision regarding whether a dispute is arbitrable. *Simon v. Pfizer Inc.*, 398 F.3d 765, 772 (6th Cir. 2005).

**A.     Authority to decide the scope of the parties' arbitration agreement**

Main Street argues that where, as here, "the parties incorporate AAA Rules in an arbitration clause, the question of arbitrability must be determined by the arbitrator." We acknowledge that the question of who should decide the scope of an arbitration clause is distinct from the question of whether a particular dispute is in fact subject to arbitration. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (citations omitted) (emphasis in original)).

Whether the incorporation of the AAA rules (which include a rule stating that the arbitrator has the authority to determine the scope of his or her own jurisdiction) constitutes a sufficiently clear delegation of this power to the arbitrator in the present case is another matter. But even if such a reference does generally delegate this power to the arbitrator, *see, e.g.*, *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that an incorporation of the AAA rules "serves as clear and unmistakable evidence of the parties' intent to delegate [issues of arbitrability] to an arbitrator"), and even if the parties in the present case properly incorporated the AAA Rules for Commercial Arbitration (which is less than clear based on the arbitration clause's reference to the AAA's "Arbitration Rules for Adoption Agencies and Related Services Disputes" rather than the Rules for Commercial Arbitration), the arbitrator would still not have the authority to decide the arbitrability of the plaintiffs' claims that are clearly outside the scope of the arbitration clause for the reasons set forth in Part III.B below.

**B.     The narrow scope of the parties' arbitration clause**

Even if we assume that the parties in the present case delegated to the arbitrator the authority to decide the scope of their arbitration clause, the plaintiffs correctly point out that this delegation would not be unlimited.  A dispute that plainly has nothing to do with the subject matter of an arbitration agreement, for example, would not give the arbitrator the authority to decide the arbitrability of this wholly unrelated claim.  Otherwise, the delegation of authority to the arbitrator to decide the scope of an arbitration agreement would require the parties to take all issues—no matter how unrelated these issues are to the parties' arbitration agreement—to the arbitrator for a threshold determination regarding arbitrability before such issues could properly be brought in court.  *See Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding that the parties' delegation to the arbitrator of decisions regarding arbitrability applies only where "a *prima facie* agreement to arbitrate" exists); *see also Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 770 (E. D. Mich. 2010) (determining that even where the parties delegate to the arbitrator the authority to decide which issues are subject to arbitration, the court must still determine, as a threshold matter, whether the claims in the instant dispute "arguably fall within the contemplated scope" of the parties' agreement).

*1.     A narrow arbitration agreement's effect on the arbitrator's delegated authority to decide the scope of arbitration*

The plaintiffs assert that every case in which the courts have held that an arbitration agreement's reference to the AAA rules delegates to the arbitrator the authority to decide the scope of arbitration involved broad arbitration provisions that covered every dispute arising out of the parties' agreement.  In contrast to these broad arbitration agreements, the agreement in the present case is narrow, covering only disputes "regarding fees."  This distinction is significant because the FAA's presumption of arbitrability regarding the merits of a dispute does not apply with equal force to narrow arbitration agreements.  *See Simon*, 398 F.3d at 775 (holding that a former employee's claim for wrongful denial of benefits under a severance plan was covered by a narrow arbitration agreement in the plan, but that his ERISA claims were not

covered). Where an arbitration provision "by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included" in the arbitration agreement. *Id.*

A narrow arbitration agreement is therefore likely to affect whether the court or the arbitrator has the authority to decide the arbitrability of a particular dispute. The more narrow the arbitration clause in question, the more likely that the provision does not even "arguably" apply to the dispute at issue. *See Bishop*, 692 F. Supp. 2d at 770 (holding that because "Bishop's claims *arguably* fall within the contemplated scope" of the contract containing the arbitration agreement, the arbitrator had the authority to decide whether the arbitration agreement covered the claims at issue (emphasis added)). In line with this principle, the plaintiffs here persuasively argue that "[t]he arbitrator had no authority to determine jurisdiction because the question of arbitrability was never 'close.'"

Main Street, on the other hand, correctly points out that an arbitrator's authority to determine the scope of an arbitration agreement is rooted in the parties' express delegation of this authority to the arbitrator. And because this authority can be delegated irrespective of the breadth (or narrowness) of the arbitration clause, this power does not disappear simply because the parties have made that delegation in the context of a narrow arbitration clause. *See Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704, at *6 (E.D. La. Jan 12, 2009) (persuasively explaining that the parties' agreement to a narrow arbitration clause regarding what types of disputes were arbitrable is separate from the question of whether they "intend[ed] for the arbitrator to decide whether a particular dispute falls within the ambit of the disputes covered by the clause"); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (distinguishing between the question of "*who* (primarily) should decide arbitrability" and the question of "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" (internal quotation marks omitted) (emphases in original)). We thus need to analyze the scope of the parties' arbitration clause in order to properly assess whether

the arbitrator should determine the arbitrability of the plaintiffs' claims in the present case.

## *2.      This court's precedent concerning narrow arbitration agreements*

Two of our recent decisions—*Bratt Enterprises, Inc. v. Noble International Ltd.*, 338 F.3d 609 (6th Cir. 2003), and *Simon*—shed light on how this court has construed narrow arbitration agreements.  In *Bratt*, the parties entered into an asset-purchase agreement for the sale of the defendant's steel-processing business.  Their agreement provided that the defendant would be liable for any accounts payable owed by the company exceeding $1.2 million.  The plaintiff asserted a breach-of-contract claim against the defendant, seeking to recover the amount of the accounts payable above the plaintiff's $1.2 million limitation on liability.  In response, the defendant "argued that the $1.2 million cap was a result of a mutual mistake and that the contract should accordingly be reformed."  *Bratt*, 338 F.3d at 612.

The parties in *Bratt* had agreed to account for the elements of the business's purchase price on a closing balance sheet and to arbitrate any disagreement concerning those amounts.  *Id.*  On the one hand, the parties' disagreement regarding the amount of the accounts payable displayed on the closing balance sheet was subject to arbitration. *Id.* at 613.  But the separate question of whether the $1.2 million cap should be reformed did "not itself involve a 'disagree[ment] with any of the amounts included in the Closing Balance Sheet.'  Rather, it involve[d] a determination of whether the parties' intent regarding [the defendant's] retained liabilities was based upon the parties' sharing a misunderstanding about an essential term of their agreement."  *Id.*  This claim was therefore determined to be outside the scope of the arbitration agreement.

To the contrary, the *Bratt* dissent reasoned that "implicit in any dispute as to the valuation of any amount on the Closing Balance Sheet is a claim as to which party is responsible for the amount" and that, "as part and parcel of determining disagreements concerning the amounts included in the Closing Balance Sheet, the parties would expect to also determine by way of arbitration the applicability of the $1.2 million limitation." *Id.* at 615 (Clay, J., dissenting).  Notwithstanding this argument, the majority in *Bratt*

determined that the validity of the $1.2 million limitation was sufficiently distinct from disputes regarding amounts on the balance sheet that there was no ambiguity concerning the scope of the parties' arbitration agreement. *Id.* at 613.

This court in *Simon* again expressed a strict approach towards interpreting the scope of narrow arbitration agreements. In *Simon*, an employee who was discharged from a drug company brought claims for retaliatory discharge under ERISA § 510 (codified at 29 U.S.C. § 1140), improper denial of benefits under the employer's severance plan, and the failure to provide proper notice of COBRA benefits pursuant to 29 U.S.C. §§ 1161, 1166. *Simon*, 398 F.3d at 768-69. The employer sought to compel arbitration on all of the plaintiff's claims based on an agreement compelling arbitration "for disputes concerning both Constructive Termination and Termination for Just Cause." *Id.* at 772.

A critical factor in *Simon* was the narrow nature of the parties' arbitration agreement. The court explained that "[t]his Court has drawn a clear line between the extensive applicability of general arbitration provisions and the more narrow applicability of arbitration clauses tied to specific disputes." *Id.* at 775. Because the parties did not sign a general arbitration provision covering all disputes arising out of their employment relationship, but rather confined their arbitration agreement to benefits claims concerning constructive termination and termination for just cause, this court concluded that the agreement covered disputes regarding only these types of claims, and not the plaintiff's ERISA and COBRA claims. *Id.* at 775-76.

### 3.     *The scope of the arbitration agreement in the present case*

An order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). But as the district court explained, notwithstanding the general presumption of arbitrability, courts may not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Turi v. Main Street Adoption Services, LLP,* No. 08-14511,

2009 WL 2923248, at *19 (E.D. Mich. Sept. 9, 2009) (unpublished opinion) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

In the present case, the parties' arbitration clause appears to be quite deliberately limited to disputes "regarding fees." The agreement first states that "*[a]ny controversy or claim* arising out of this agreement if less than or equal to $5,000 shall be resolved by an action in small claims court of the Municipal Court of the City of and County of Lancaster Pennsylvania." (Emphasis added.) It then goes on to provide that "[i]f a *claim regarding fees* charged by us exceeds $5,000, it shall be resolved by arbitration . . . . In agreeing to arbitration, we both acknowledge that, in the event of a *dispute over fees* charged by us, each party is giving up the right to have the dispute decided in a court of law before a judge or jury and instead we are accepting the use of arbitration for resolution of this matter." (Emphases added.) By distinguishing between "any controversy or claim" worth $5,000 or less—which is to be decided in a small-claims court—and "a claim regarding fees" or "a dispute over fees" exceeding $5,000—which is to be decided by arbitration—the parties expressly limited arbitrable claims to disputes regarding fees (over $5,000) and excluded other claims arising out of their adoption agreement.

The Complaint in the present case alleges violations of RICO, as well as state-law claims for unjust enrichment, conversion, civil conspiracy, fraudulent misrepresentation, innocent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress. We recognize, of course, that a party may not avoid arbitration by simply renaming otherwise arbitrable claims. *See Simon*, 398 F.3d at 776. The district court acknowledged here that "certainly the plaintiffs seek to recover fees paid, presumably in their unjust enrichment count." Similarly, the plaintiffs' conversion claim seeks to recover their property and money—i.e., fees—that Main Street has allegedly converted. But the plaintiffs' other claims go beyond seeking the recovery of the fees that they paid to Main Street.

The plaintiffs' claims for RICO violations, civil conspiracy, fraudulent misrepresentation, innocent misrepresentation, intentional infliction of emotional

distress, and negligent infliction of emotional distress all plausibly seek damages beyond restitution for fees paid to Main Street. Other than fees, the plaintiffs' alleged damages include the time and (nonfee) resources that they invested in pursuing their adoptions, treble damages under RICO, loss of employment and housing, and various emotional damages. These claims do more than merely recast the plaintiffs' claims for fees; they seek damages based on Main Street's alleged fraud that are separate from the fees paid to Main Street. Because the relevant provisions of the arbitration clause refer only to claims regarding fees and not to other types of claims, "as an initial matter, it is clear that [the plaintiffs' nonfee claims] are not within the scope of any general or specific arbitration provision." *See Simon*, 398 F.3d at 776. And even if the plaintiffs' fee and nonfee claims "arise from the same factual underpinnings . . . , it does not necessarily follow that the [nonfee] claims must also be arbitrated. The question of whether or not [the nonfee] claims share facts with the arbitrable claims is not necessarily determinative of arbitrability of the [nonfee] claims." *Id.*

Rather, "[w]here one claim is specifically covered by an arbitration agreement, and a second claim is not, the arbitrability of the second is governed by the extent to which the second claim is substantially identical to the first." *Id.* The fact that "a claim 'requires reference' to an arbitrable issue or factual dispute" or that the two claims are "intermingled" is not determinative of whether the two claims are "substantially identical." *Id.* at 776-77 (quoting *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003)).

In *Simon*, this court determined that only the plaintiff's claim for constructive-termination benefits under the plan was covered by the arbitration agreement, but that his ERISA and COBRA claims were outside the scope of the agreement. *Id.* at 777. Even though the plaintiff's right to recover under all three of these claims depended on the reason for his termination, the court still determined that the plaintiff's ERISA and COBRA claims were "independent claims that are statutorily authorized and that depend upon different legal standards" than his claim for benefits under the plan. *Id.*

So too here, the plaintiffs' nonfee claims are independent of their claims for fees because the nonfee claims require proof of additional elements beyond the claims for the recovery of their fees. And the nonfee claims by their nature allow plaintiffs to recover damages beyond the recovery of fees allegedly misappropriated by Main Street. Moreover, the RICO claims are statutorily based. Although separating these claims between arbitration and the court will entail added effort, "the parties [may] only be compelled to arbitrate matters within the scope of their agreement . . . even when the result may be piecemeal litigation." *Bratt*, 338 F.3d at 613; *see also Simon*, 398 F.3d at 776.

### 4.     *Who should decide the arbitrability of the plaintiffs' claims*?

Because the parties agreed that only disputes "regarding fees" would be subject to arbitration, we can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the plaintiffs' nonfee claims. *See AT & T Techs., Inc. v. Commnc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). But as we discussed above, the question of whether a particular dispute is arbitrable is distinct from the issue of who should decide that question. *See* Part III.A above. We also explained, however, that even where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least *arguably* covered by the agreement. *See* Part III.B above.

 The plaintiffs' fee claims here—for unjust enrichment and for conversion—are clearly covered by the arbitration clause "regarding fees" and therefore must be resolved by arbitration. Their remaining claims, however, are with equal clarity outside the scope of the parties' narrow arbitration clause and thus not even arguably subject to arbitration. Because the plaintiffs' fee-related claims are so clearly delineated from their nonfee claims, we find no ambiguity regarding subject-matter jurisdiction in the present case. We therefore see no need for an arbitrator to decide the arbitrability of any of the plaintiffs' claims.

## IV.    CONCLUSION

For all of the reasons set forth above, we **DISMISS AS PREMATURE** Main Street's challenge to the rulings of the district court regarding personal jurisdiction and venue, **REVERSE** the judgment of the district court retaining subject-matter jurisdiction over the plaintiffs' fee-related claims (for unjust enrichment and for conversion), **AFFIRM** its judgment retaining subject-matter jurisdiction over the plaintiffs' remaining claims, and **REMAND** the case for further proceedings consistent with this opinion.