**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0340n.06

Case No. 16-5326

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 19, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ARVION TAYLOR, on her own behalf and others similarly situated, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| PILOT CORPORATION, PILOT TRAVEL CENTERS LLC, | ) ) ) | **O P I N I O N** |
| Defendants-Appellants, | ) | |

**BEFORE: SILER, CLAY, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** No company wants its employees to receive a letter informing them that they might be eligible to join a lawsuit against it. This sometimes happens when an employee brings a "collective action" against the company under the Fair Labor Standards Act—or FLSA, for short. *See* 29 U.S.C. § 216(b). In such lawsuits, a lead plaintiff may request that the trial court approve notice to some class of employees that she hopes to represent. Usually, a defendant who thinks the court erred in approving notice cannot vindicate that belief until well after the mail goes out because we lack jurisdiction over an appeal until a final judgment on the merits.

Defendants here, who we'll refer to collectively as "Pilot," maintain that the district court erred in approving notice of this collective action to many of their employees because those

employees agreed to arbitrate any FLSA claims. Pilot contends that in this case we can correct this supposed error immediately because the Federal Arbitration Act—or FAA—provides us with jurisdiction over certain interlocutory orders. For the following reasons, we disagree with Pilot and hold that we lack jurisdiction to resolve this issue in an interlocutory appeal. As to the other issue Pilot raises—whether the district court erred in denying its request for a stay under the FAA—we have jurisdiction, but find no error. Thus, we affirm.

I

Pilot operates a large, nationwide chain of truck stops. Some locations house both a convenience store and a fast food restaurant. As a result, Pilot employs tens of thousands of workers to man cash registers, stock shelves, and make sandwiches—many positions are hourly and protected by the FLSA's overtime rules.

Plaintiff Arvion Taylor worked at a Pilot truck stop for about two years. She says that during this time her managers routinely altered her time sheets to avoid paying her overtime. According to Taylor, Pilot's managers rolled back workers' hours at locations across the country as a matter of policy.

She sought to recover from Pilot for these alleged overtime violations by bringing this "collective action" under the FLSA. *See* 29 U.S.C. § 216(b). A collective action allows Taylor to proceed against Pilot with other employees who are "similarly situated" to her. *See id.* In that a collective action lets Taylor represent a larger group with similar claims, it somewhat resembles a class action under Rule 23 of the Federal Rules of Civil Procedure.

Class actions and collective actions differ, however, in at least two ways important here. First, whereas Rule 23 creates a regime where class members are either bound by the litigation or must *opt out* of a suit to avoid becoming parties bound by any judgment, the FLSA requires

employees to *opt in* to the action. *Compare Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (holding that a non-named class member with opportunity to opt out constitutes a "party" bound by a settlement) *with* 29 U.S.C. § 216(b). Second, whereas Rule 23 outlines a relatively detailed class-certification process, the FLSA says little about how collective actions should work. *Compare* Fed. R. Civ. P. 23 *with* 29 U.S.C. § 216(b). It never defines, for example, what it means for employees to be "similarly situated." *See* § 216(b).

The FLSA's silence has left trial courts to develop a method for managing collective actions. The collective action's intuitive similarity with Rule 23 class actions has led trial courts to call the process that has emerged "class certification." *See, e.g.*, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Yet, the collective action's substantive differences with a class action mean the process looks little like class certification under Rule 23.

Generally, "class certification" in a collective action unfolds in two stages. At stage one, the court supervises plaintiff's notice to employees who may become plaintiffs. *Id.* at 547. The court will usually receive a motion from the plaintiff asking it to approve a letter informing employees that they may be "similarly situated" to her and may consent to joining the action. *Id.* at 547. At this point, the court conditionally decides which employees count as being "similarly situated" to the plaintiff and thus eligible to receive a court-approved letter. *See id.* (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989)). Courts and litigants often refer to this stage as "conditional class certification." *See, e.g., id.* Unlike actual class certification under Rule 23, however, its only effect is to allow notice to the employees—the "conditional-class members" do not become parties or obtain any "independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013).

At stage two, the court reexamines whether the employees actually meet the similarly-situated requirement and should be allowed to proceed collectively. *See Comer*, 454 F.3d at 547. At this point, the court knows who has opted in and generally has more information to work with from discovery. *Id.* It can always remove employees from the "class" it "certified" at stage one. *Cf. id.*

The trial court here followed this framework. At stage one, Taylor asserted that all Pilot employees with certain job titles were similarly situated to her and should receive notice. Pilot opposed this request. Although neither Taylor nor the seven employees that joined her before stage one agreed to arbitrate, Pilot said it likely had agreements with other putative class members but would address the issue in a separate motion. Pilot also argued that Taylor's class covered so many employees—about 80,000—that it would make class litigation unmanageable. The district court sided with Taylor and "conditionally certified" her proposed class.

Understandably, Pilot disliked this outcome. Whether these employees have meritorious claims under Taylor's theory or no claims at all, Pilot would likely prefer that they not receive a letter informing them that they might. So, Pilot asked the court to dismiss some 50,000 employees with arbitration agreements from the class. It argued both that these employees lacked similarity to Taylor and that the court lacked subject-matter jurisdiction over their claims. As alternative relief, Pilot asked the court to stay the proceedings under section 3 of the FAA until "all arbitration have been had." R. 84-15, PID 883.

The district court declined to do either. It said that it would determine whether Pilot's standard arbitration contracts were enforceable only after it collected and reviewed information on who opted into the litigation. Pilot then filed this appeal asking for interlocutory review.

II

Pilot primarily wants this court to hold that the district court erred in "conditionally certifying" Taylor's class, and thus in approving notice to its employees with arbitration agreements. But it appears that we cannot reach the merits of that question due to a jurisdictional roadblock. And Pilot never quite finds a satisfactory way around it.

A

Generally, we would lack authority to review a conditional class certification on interlocutory appeal. The statute providing this court with general appellate jurisdiction only allows appeals from a district court's "final decisions." 28 U.S.C. § 1291. This statute embodies the so-called final-judgment rule which requires a party to "raise all claims of error in a single appeal following final judgment on the merits." *Flanagan v. United States*, 465 U.S. 259, 263 (1984) (citations and quotations omitted).

A district court's decision to approve notice to a conditionally-certified FLSA class is not a final judgment on the merits. It is also not a collateral order excepted from the final-judgment rule. *Comer,* 454 F.3d at 549. As the qualifier "conditional" indicates, it does not even purport to resolve conclusively the issue it addresses—whether employees are "similarly situated" to the named plaintiff. *See id.* Therefore, our precedent has held that we cannot hear immediate appeals from such decisions. *Id.*

B

Pilot insists that it found two paths around this obstacle, however, through the FAA. As Pilot points out, the FAA allows immediate appeal over certain interlocutory orders:

> **(a)** An appeal may be taken from--
>   **(1)** an order--
>       **(A)** refusing a stay of any action under section 3 of this title,
>       **(B)** denying a petition under section 4 of this title to order arbitration to proceed,
>       **(C)** denying an application under section 206 of this title to compel arbitration,
>       **(D)** confirming or denying confirmation of an award or partial award, or
>       **(E)** modifying, correcting, or vacating an award;
>   **(2)** an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
>   **(3)** a final decision with respect to an arbitration that is subject to this title.

9 U.S.C. § 16(a). Pilot says that its first path to us runs through § 16(a)(1)(A). The second supposedly runs through § 16(a)(1)(B).

1

The first path indeed allows Pilot to immediately present *something* to this court. The FAA allows for an immediate appeal from "[a]n order . . . refusing to stay any action under section 3" of the FAA. § 16(a)(1)(A). Pilot requested a stay under section 3 of the FAA. *See* R. 84-15, PID 883. The district court refused to stay the action. *See* R. 95, PID 1527. Pilot appealed that decision. Ergo, Pilot is appealing an order refusing to stay an action under section 3 of the FAA.[1]

---

[1] Contrary to Taylor's assertions, whether Pilot was entitled to a stay does not affect our jurisdiction. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628–29 (2009). Even the "utter frivolousness of the underlying request for a § 3 stay cannot turn a denial into something other than '[a]n order . . . refusing a stay of any action under section 3." *Id.* (citing 9 U.S.C. § 16(a)(1)(A)). To hold otherwise would conflate the jurisdictional question with the merits. *Id.*

But this jurisdictional path can only take Pilot so far. This court interprets § 16 to grant us jurisdiction over immediate appeals from specific arbitration-related decisions—not over other issues that a court happens to address in the same order as those decisions. *See Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 502 (6th Cir. 2011) (holding that the court lacked jurisdiction over personal-jurisdiction and venue defenses addressed in a district court's order refusing to dismiss and compel arbitration). Pilot can appeal the denial of its stay request—but it cannot use the denial as a smuggling route for otherwise non-appealable issues. We hold that § 16(a)(1)(A) grants us authority to consider only the denial of Pilot's request for a stay.[2]

2

As to the denial of Pilot's request for a stay, we see no error. Section 3 entitles a party to a stay of any "suit or proceeding . . . brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Pilot requested a stay "until all

---

[2] Pilot suggests, without any supporting argument, that this court could exercise pendent appellate jurisdiction over some non-appealable issues in this case. Pilot's Principal Brief at 36, n. 22; Reply Brief at 21. We cannot exercise this discretionary jurisdiction over the district court's conditional-certification decision, however. For this court to exercise pendent appellate jurisdiction over an otherwise non-appealable issue, that issue must be "inextricably intertwined" with an appealable issue. *Turi*, 633 F.3d at 502. Meaning, our resolution of the appealable issue must "necessarily and unavoidably" decide the non-appealable issue. *Id.* Here, that would require our decision on whether the FAA entitled Pilot to a stay to unavoidably resolve whether the employees with arbitration agreements are similarly situated under § 216(b) of the FLSA.

The two issues here simply do not rise and fall together. If we affirm the district court's decision to deny a stay, we remain free to come out either way on whether the court improperly deemed the employees "similarly situated" under § 216(b). *See Comer*, 454 F.3d at 549. Pilot does not discuss pendent appellant jurisdiction in any depth, so we decline to discuss the intertwinement issue any further.

Further, even if we could exercise pendent jurisdiction, we would decline to do so here. Given that the FAA allows intermediate appeals over any denial of a request for a stay, some possibility exists that defendants might make far-fetched or premature stay requests to delay litigation. *See Arthur Andersen LLP*, 556 U.S. at 634 (Souter, J., dissenting). Where, as here, we find a request premature, granting pendent appellate jurisdiction over other issues might encourage litigants to make meritless requests for stays as a means to challenge other non-appealable decisions.

arbitrations have been had" as alternative relief to its request that the district court remove employees with agreements from the conditional class. R. 84-15. It seems unclear from the record when, exactly, Pilot wanted the court to stay the proceedings. Perhaps it meant immediately. But perhaps it instead meant for the court to stay the proceedings after any future opt-in plaintiffs with claims referable to arbitration completed their respective arbitrations.

To the extent Pilot wanted a stay immediately, its request lacked merit. As previously stated, a "conditional certification" under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp*, 133 S. Ct. at 1530. It simply allows the sending of court-approved written notice to employees who must then affirmatively opt in to the litigation. *Id.* (citing *Hoffmann–La Roche Inc., supra,* at 171–172). When Pilot requested a stay, no plaintiff in the litigation had a claim—or an issue in a claim—referable to arbitration. Some opt-in plaintiffs possibly will. But until they join this action, Pilot lacks any entitlement to a stay under the FAA.

To the extent Pilot meant to request a stay at some indeterminate point in this litigation's future, its request was premature. Further, that the FAA would actually entitle Pilot to stay the proceedings with respect to plaintiffs that never agreed to arbitrate with Pilot until Pilot finished arbitrating with those who had seems questionable. *See Mendez v. Puerto Rican Int'l Companies, Inc.*, 553 F.3d 709, 711 (3d Cir. 2009) ("We conclude that Section 3 was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court."). But we have no occasion to address that issue now.

C

Pilot's second jurisdictional path through § 16(a)(1)(B) leads it nowhere. This section allows appeals from orders "denying a petition under section 4 of [the FAA] to order arbitration

to proceed." § 16(a)(1)(B). Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement," would have jurisdiction "to direct arbitration to proceed." 9 U.S.C. § 4.

Pilot never filed a petition to compel arbitration under section 4. Nor would it have reason to do so. No party to this litigation has agreed to arbitrate with Pilot. And Pilot points to no one else with a written arbitration agreement who has so far failed, neglected, or refused to arbitrate. Hence, Pilot can cite no order denying a petition under section 4 to appeal from.[3]

This would seem to resolve the matter. But Pilot argues that the denial of its motion to dismiss employees with arbitration agreements from the conditionally-certified class nevertheless constitutes an appealable order under this provision. For support, it cites cases where we have found appellate jurisdiction under § 16 after a district court refused "to enforce, through dismissal or stay," a plaintiff's agreement to arbitrate with a defendant. *Simon v. Pfizer, Inc.*, 398 F.3d 765, 772 (6th Cir. 2005); *Turi*, 633 F.3d at 501 (citing *Simon*, 398 F.3d at 772–73).

Pilot misunderstands what made those cases immediately appealable, however. In both *Turi* and *Simon*, the defendants' motions to dismiss functioned as requests to compel arbitration. In each case, the court faced a motion to dismiss claims that were brought (1) by an actual party to the litigation; (2) who had allegedly agreed in writing to arbitrate; but (3) refused to do so. *See Turi*, 633 F.3d at 501; *Simon,* 398 F.3d at 771–72. Although we cited to § 16 without

---

[3] Again, it matters that neither Taylor nor those who have joined her thus far have agreed to arbitrate. If Taylor had, this would change things. *See Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 373 (5th Cir. 2016) (holding that the district court erred in refusing to compel named plaintiff to arbitration because it wanted to consider the enforceability his arbitration agreement after receiving opt ins). If that were the case, Pilot could actually point to a party refusing to arbitrate and seek to compel arbitration.

referencing a subsection, we recognized that the movant sought to compel arbitration. *See Turi*, 633 F.3d at 509 (describing the employer in *Simon* as seeking "to compel arbitration" and analyzing the district court's decision in its case as whether "an order to arbitrate" should be granted). Each request, then, functionally sought relief similar to a section-4 petition.

Pilot's motion differs from these motions. It challenged the district court's conditional determination that employees met the FLSA's similarly-situated requirement and thus should receive notice about this action. Pilot's motion never sought to force any intransigent party with an arbitration contract into an arbitral forum. Instead, the motion merely aimed to prevent non-parties to this litigation from hearing about it.

Pilot thinks these differences should be irrelevant to evaluating our jurisdiction, however. It wants us to only consider that its motion requested "dismissal." Pilot's thinking goes something like this: (1) the motions denied in *Turi* and *Simon* were motions to dismiss; (2) we had jurisdiction to review their denial; (3) Pilot's motion called itself a motion to dismiss; (4) the Supreme Court has said that jurisdiction over "appeal must be determined by focusing upon the category of order appealed from," *Arthur Andersen, LPP*, 556 U.S. at 628; (4) thus, we must have jurisdiction over the order denying Pilot's motion because the motion fits into the same "category" as those denied in *Turi* and *Simon*.

There is a fatal flaw in this reasoning. We found jurisdiction in *Turi* and *Simon* despite those orders' failure to fit facially into an appealable "category" under the FAA—such as an order "denying a petition under section 4" or an order "refusing to grant a stay under section 3." We have no occasion—or authority—to revisit *Turi*'s or *Simon*'s holdings. But we refuse to read those cases to say that we have jurisdiction over the denial of Pilot's motion simply because it

uses the same term as a different motion that itself only functionally resembled a petition under section 4. This would simply be one too many degrees of separation from the FAA's text.

Finally, Pilot vaguely invokes the policy behind the FAA. It cites various cases for the proposition that the FAA allows immediate appeal from orders "hostile" to arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) ("Section 16 generally permits immediate appeal of orders hostile to arbitration."); *Preferred Care of Delaware, Inc. v. Estate of Hopkins*, 845 F.3d 765, 770 (6th Cir. 2017) (stating that the FAA "permits review of orders that interfere with arbitration[.]"). These statements indeed reflect the statutory scheme's gist: it makes many orders that might interfere with arbitration immediately appealable. But they do not say that we can create new categories of appealable orders simply by reciting the FAA's policy.

III

We hold that we have jurisdiction over this appeal only to the extent that Pilot challenges the denial of its request for a stay. On this issue, we affirm.