RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BROOKE CLARK,

*Plaintiff*,

LARRY HOLDER; CALVIN MARCUM, JESSICA VANWINKLE,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

A&L HOMECARE AND TRAINING CENTER, LLC; NILA IRBY; DAWNETTA ABBETT, RUTHIE LUCAS,

*Defendants-Appellants/Cross-Appellees*.

Nos. 22-3101/3102

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cv-00757—Matthew W. McFarland, District Judge.

Argued: December 7, 2022

Decided and Filed: May 19, 2023

Before: KETHLEDGE, WHITE, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** M. Scott McIntyre, BAKER & HOSTETLER LLP, Cincinnati, Ohio, for Appellants/Cross-Appellees. Gregory R. Mansell, MANSELL LAW LLC, Columbus, Ohio, for Appellees/Cross-Appellants. **ON BRIEF:** M. Scott McIntyre, BAKER & HOSTETLER LLP, Cincinnati, Ohio, Gregory V. Mersol, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellants/Cross-Appellees. Gregory R. Mansell, Carrie J. Dyer, Rhiannon M. Herbert, MANSELL LAW LLC, Columbus, Ohio, for Appellees/Cross-Appellants. Steven P. Lehotsky, LEHOTSKY KELLER LLP, Washington, D.C., Lindsey Rothfeder, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., Richard J. (Rex) Burch, BRUCKNER BURCH PLLC, Houston, Texas, Andrew R. Biller, BILLER & KIMBLE, LLC, Cincinnati,

Ohio, Robert E. DeRose, BARKAN MEIZLISH DEROSE COX, LLP, Columbus, Ohio, for Amici Curiae.

KETHLEDGE, J., delivered the opinion of the court in which BUSH, J., joined in full, and WHITE, J., joined in part. BUSH, J. (pp. 11–14), delivered a separate concurring opinion, in which WHITE, J., joined. WHITE, J. (pp. 15–23), delivered a separate opinion concurring in part and dissenting in part.

————————

**OPINION**

————————

KETHLEDGE, Circuit Judge. Under the Fair Labor Standards Act of 1938 (FLSA), plaintiffs may litigate federal minimum-wage and overtime claims on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). At issue here is the showing of similarity that is necessary for a district court to facilitate notice of an FLSA suit to employees who were not originally parties to the suit. District courts nationwide have had little guidance as to what that showing should be. We adopt a standard different than the one the district court adopted here, and remand for the district court to apply it.

I.

A.

The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of . . . themselves and other employees similarly situated." *Id.* § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Thus—assuming they are "similarly situated"—other employees become parties to an FLSA suit only if they affirmatively choose to do so.

The issue in this case concerns the manner in which other employees come to learn about the existence of an FLSA suit itself. Normally plaintiffs come to the courts, rather than vice versa. *See Osborne v. Bank of United States*, 22 U.S. 738, 819 (1824) (The "judicial power . . . is capable of acting only when the subject is submitted to it by a party who asserts his rights

in the form prescribed by law."). But in *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989), a majority of the Court discerned in § 216(b) an implied judicial power, "in appropriate cases," to "facilitat[e] notice" of FLSA suits "to potential plaintiffs." *Id.* at 169. What the Court meant by "potential" plaintiffs, for purposes of facilitating notice of an FLSA suit, the Court did not say; the Court merely "confirm[ed] the existence of the trial court's discretion, not the details of its exercise." *Id.* at 170.

There matters have stood for the ensuing 30-odd years, leaving the district courts, on that question, with little guidance that one can call law. The question, more specifically, concerns the showing of similarity that the plaintiffs must make for the district court to send notice of an FLSA suit to other employees as "potential plaintiffs." Neither the statute, nor *Hoffman-La Roche*, nor (so far as we can tell) any traditional practice at common law or equity says much about what the requisite showing should be. Yet the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold.

In the meantime—whether by independent deliberation or by "anchoring bias" (meaning the tendency of persons to rely heavily on the first piece of information they receive when making decisions, *see, e.g.,* Am. Psychol. Ass'n, Dictionary of Psychology, Primacy Anchoring Bias, *available at* https://dictionary.apa.org/primacy-effect)—most district courts have adopted a two-step approach first described in a 1987 decision from a district court in New Jersey. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). In the first step—called "conditional certification"—a district court may facilitate notice of an FLSA suit to other employees upon a "modest factual showing" that they are "similarly situated" to the original plaintiffs. *See, e.g., Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002). That standard is a "fairly lenient" one. *See, e.g., Knecht v. C & W Facility Servs., Inc.*, 534 F. Supp. 3d 870, 873 (S.D. Ohio 2021). Thereafter, when merits discovery is complete— assuming the case has not settled in the meantime, which it usually has—the court takes a closer look at whether those "other employees" are, in fact, similarly situated to the original plaintiffs. *See, e.g., Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006). To the extent

the court concludes they are similarly situated, it then grants "final certification" for the case to proceed to decision as a collective action. *Id.*

## B.

In September 2020, the named plaintiffs—a number of former "home-health aides"—brought this suit against A&L Homecare & Training, LLC and its owners (collectively, "A&L") under the FLSA and Ohio law. The plaintiffs alleged that A&L had paid them less than the correct overtime rate and under-reimbursed their vehicle expenses, thereby reducing their pay below the federal and state minimum wages.

The plaintiffs thereafter moved for the district court to facilitate notice of their action to three groups of other employees who had worked for A&L. The court adopted the two-step "certification" procedure described above, applied the usual "fairly lenient" standard, and "conditionally certified" two of the three groups as "collectives" for purposes of receiving notice of the suit. The court further held, however, that it would not facilitate notice to employees who had left A&L more than two years before (which, in the court's view, was the applicable limitations period here) or who had signed a "valid arbitration agreement" with A&L.

The district court also observed that our court had not yet addressed the merits of the *Lusardi* two-step "certification" approach, and that the Fifth Circuit had recently rejected it. *See Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). Nor, the district court observed, had our court addressed the effect of an alleged arbitration agreement on an employee's ability to receive notice. The court therefore certified its order for interlocutory review under 28 U.S.C. § 1292(b). We granted permission for A&L to appeal and for plaintiffs to cross-appeal that order.

## II.

We review for an abuse of discretion a district court's decision whether to send notice of an FLSA suit to "other employees" of the defendant. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 401 (6th Cir. 2017). In doing so, we review questions of law de novo. *See, e.g.*, *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013).

A.

The principal question here is one of law.  The plaintiffs argue we should adopt the *Lusardi* approach and its lenient standard for "conditional certification" for purposes of sending notice of an FLSA suit to other employees.  A&L counters that we should adopt the Fifth Circuit's approach—under which, as A&L understands it, the district court must make a "final" determination of substantial similarity before facilitating notice of the suit to other employees. A&L Br. at 10.

We adopt neither of those approaches.  As an initial matter, we reject *Lusardi*'s characterization of the notice determination as a "certification," conditional or otherwise. Certification is a term borrowed from Civil Rule 23, which governs whether a case may proceed as a class action.  And class actions under Rule 23 "are fundamentally different from collective actions under the FLSA."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). Specifically, unlike a Rule 23 class action, an FLSA collective action is not representative— meaning that "all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action."  *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021) (cleaned up).  Thus—in contrast to members of a Rule 23 class—similarly situated employees who join an FLSA action become parties with "the same status in relation to the claims of the lawsuit as do the named plaintiffs."  *Id.* at 402-03 (cleaned up).  In sum, under Rule 23, the district court certifies the action itself as a class action; whereas in an FLSA action, under § 216(b), the district court simply adds parties to the suit.  Hence the term "certification" has no place in FLSA actions.  *See, e.g.*, *Fischer v. Federal Express Corp.*, 42 F.4th 366, 376 (3d Cir. 2022).

The issue is not one of semantics.  Instead, courts have mistakenly assumed that "conditional certification" actually changes the character of the case.  For example, any number of courts have asserted that, after conditional certification, the case then "proceeds" as a "collective" or even a "representative" action.  *See, e.g., Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1042 (S.D. Ohio 2018); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018).  Those assertions are mistaken: "other employees" become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court

determines—not conditionally, but conclusively—that each of them is in fact "similarly situated" to the original plaintiffs. 29 U.S.C. § 216(b); *Canaday*, 9 F.4th at 403. True, in *Hoffman-LaRoche*, the Supreme Court indicated that a district court may permit discovery for purposes of those "similarly situated" determinations. 493 U.S. at 170. But—whether called "conditional certification" or otherwise—the notice determination has zero effect on the character of the underlying suit. On that point the Supreme Court has been clear. *See Genesis Healthcare*, 569 U.S. at 75 ("The sole consequence of conditional certification is the sending of court-approved written notice to employees.").

We turn to the showing necessary for the district court to facilitate notice to "other employees." In *Hoffman-LaRoche*, as noted above, the Supreme Court used the term "potential plaintiffs" as an undefined shorthand for persons to whom a district court may facilitate notice of the suit. 493 U.S. at 169. In *Swales*, the Fifth Circuit held that court-approved notice may be sent only to employees "who are actually similar to the named plaintiffs"—meaning, apparently, that the district court must find by a preponderance of the evidence that those employees are similarly situated to the original plaintiffs. 985 F.3d at 434. But "potential plaintiffs" can just as easily mean employees who—based on a lesser showing of likelihood—*might* be similarly situated to the original plaintiffs, and who thus might be eligible to join the suit. The facts of *Hoffman-LaRoche* support that reading: there, the Supreme Court affirmed the district court's issuance of notice after the district court had expressly held that "notice to absent class members need not await a conclusive finding of 'similar situations.'" *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 406 (D.N.J. 1988).

Nor, as a practical matter, do we see how a district court can conclusively make "similarly situated" determinations as to employees who are in no way present in the case. Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were. *See, e.g., Pierce v. Wyndam Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019). Whether other employees are subject to individualized defenses—such as an employee's agreement to arbitrate a claim—can also affect whether particular employees are similarly situated for purposes of sending notice.

*See id.* at 745.  All these issues tend to be factbound, meaning they depend on the specific facts pertaining to those employees.  And as to all these issues, the "other employees" themselves will usually have knowledge—sometimes unique knowledge—of the relevant facts.  For example, an employer's records might show that an employee worked less than 40 hours per week during a certain period; the employee might be ready to testify that she worked more.  Or an employer's records might show that another employee did not perform certain tasks; yet the employee knows that he performed them every day.  Thus, where the employer's records show dissimilarity, the other employees themselves might have evidence of similarity; or the converse might be true.  Defendants depose plaintiffs in civil litigation for good reasons:  among them, plaintiffs often know relevant facts (sometimes helpful to the plaintiff's case, sometimes harmful) that the defendant does not.  That is as likely to be true about "similarly situated" determinations as about any other factbound determination.  We therefore disagree that a district court can or should determine—in absentia—whether other employees are "actually" similarly situated to the original plaintiffs.

But neither do we think a district court should facilitate notice upon merely a "modest showing" or under a "lenient standard" of similarity.  The Supreme Court made clear in *Hoffman-LaRoche* that the court's facilitation of notice must not "in form or function" resemble "the solicitation of claims."  493 U.S. at 174.  And notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own. *See Swales*, 985 F.3d at 434.  To the extent practicable, therefore, court-approved notice of the suit should be sent only to employees who are in fact similarly situated.

A district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction.  Both decisions are provisional, in the sense that the court renders a final decision on the underlying issue (whether employees are "similarly situated" here, success on the merits there) only after the record for that issue is fully developed; yet both decisions have immediate consequences for the parties.  Three of the four prongs of the preliminary-injunction standard—namely, the ones concerning "irreparable injury," "substantial harm to others," and the "public interest," *see, e.g., Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021)—are inapposite here.  What the

notice determination undisputedly shares in common with a preliminary-injunction decision, rather, is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision.

We adopt that part of the preliminary-injunction standard here; and we hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves. *See, e.g., id.* That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance. The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances.

In applying this standard, district courts should expedite their decision to the extent practicable. The limitations period for FLSA claims typically is two years. 29 U.S.C. § 255(a). If the plaintiffs in an FLSA suit move for court-approved notice to other employees, the court should waste no time in adjudicating the motion. To that end, a district court may promptly initiate discovery relevant to the motion, including if necessary by "court order." Fed. R. Civ. P. 26(d)(1).

In sum, we will vacate the district court's notice determination and remand for the court to redetermine that issue under the strong-likelihood standard.

B.

That leaves the plaintiffs' cross-appeal. They first challenge the district court's refusal to send notice to other employees "who have signed arbitration agreements." Ord. at 17. As an initial matter, this type of contention—that "other employees" have agreed to arbitrate their claims—illustrates the impracticability of conclusively determining, in absentia, whether other employees are similarly situated to the original plaintiffs. For example, whatever a defendant's records might say, a particular employee—when confronted with such a contention—might testify "under oath that he 'unequivocally' did not consent to or acknowledge an arbitration agreement." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 836, 843 (6th Cir.

2021).   Or an employee might argue that his arbitration agreement with the employer lacked consideration, or was the result of fraud, duress, or mistake.  *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).  Or he might argue that the agreement was procedurally unconscionable—which typically requires a determination whether "the individualized circumstances surrounding each of the parties to a contract [were] such that no voluntary meeting of the minds was possible[.]" *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 365 (6th Cir. 2014) (cleaned up) (applying Ohio law).   We therefore respectfully disagree that district courts can or should determine, "by a preponderance of the evidence," whether absent employees have agreed to arbitrate their claims.  *See generally JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019) (requiring such a determination for purposes of FLSA notice); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) (same).

As for the plaintiffs' argument itself, "the different defenses to which the plaintiffs may be subject" is already a factor when determining whether other employees are similarly situated to the original plaintiffs.  *Pierce*, 922 F.3d at 744.  And for that purpose a defense based on an alleged arbitration agreement is a defense like any other.  The parties can present whatever evidence they like as to such a contention; the district court should consider that evidence along with the rest in determining whether the plaintiffs have made the requisite showing of similarity.  Moreover, to be clear, "[e]mployees bear the burden of satisfying this requirement." *Id.*  A defense based on putative arbitration agreements does not shift that burden more than any other defense does.

We likewise reject the plaintiffs' assertion that an arbitration defense is off-limits for purposes of the notice determination because that defense presents "merits questions."  *See, e.g., Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 206 (D.D.C. 2018); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013).  Of course it does:  nearly every defense concerns the claim's merits.  *See Pierce*, 922 F.3d at 745.  The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same

alleged discriminatory activity." *Hoffman-LaRoche*, 493 U.S. at 170. Thus, on remand, the district court should consider the parties' evidence as to arbitration agreements along with all the other evidence in determining whether the plaintiffs have met the strong-likelihood standard.

Finally, as to the plaintiffs' remaining argument, a limitations defense is likewise a defense like any other for purposes of determining similarity. Hence the district court should consider the parties' respective showings on that issue when making its notice determination on remand.

\* \* \*

The district court's August 4, 2021 Order is vacated, and the case is remanded for proceedings consistent with this opinion.

———————————

**CONCURRENCE**

———————————

JOHN K. BUSH, Circuit Judge, concurring. I fully join the majority opinion but write separately because equitable tolling should be made available to plaintiffs in collective actions under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. The statute of limitations for FLSA actions is usually two years. 29 U.S.C. § 216(b). The heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit. As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run.

This concern of late notice already arises under the FLSA notification process. For example, in this case, the district court followed the process of *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and notice was to be sent 361 days after the filing of the complaint. Under the procedure we announce, there will be even further delay. Our approach is more faithful than the *Lusardi* process to implement the statutory directive that plaintiffs be "similarly situated." But implementation of the newly announced standard without consideration of tolling is likely to deplete remedies Congress has duly provided.

Notice to non-parties is not explicitly provided for in the FLSA. The collective-action provision is hardly clear in the procedures courts are to follow. *See* 29 U.S.C. § 216(b). In deciding a case about the provision of notice in FLSA collective actions, we unavoidably explore beyond Congress's words. But notice is and must be implied by the statute because the right to "proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). That is, the Supreme Court recognized that notice was needed to ensure that a collective action could actually occur.

Because notice is not explicitly provided by the statute, it necessarily follows that the way notice interacts with the statute of limitations also is not explicitly described. However, it is

clear from Supreme Court precedent that the statutory framework requires "accurate and timely notice concerning the pendency of the collective action, so that [plaintiffs] can make informed decisions about whether to participate." *Id.* The Court's reference to "accurate and timely notice" must mean not only that it be (1) "accurate"—which helps protect defendants' rights by ensuring that only "similarly situated" potential plaintiffs receive notice—but also that it be (2) "timely"—which ensures the recipient of that notice will have the right to act upon it rather than have that right denied because of a statute of limitations that ran before the notice was received.

Tolling in this context should be recognized by analogy to class actions. When a class is certified, the class members' claims are deemed to relate back to the date of filing of the class action complaint. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974). The reasons for this rule are multiple. First, the Supreme Court framed potential class members as "passive beneficiaries" of the suit, with no duty to "exercise any responsibility" until notice has been provided. *Id.* at 552. Second, failure to toll a limitations period would frustrate class actions writ large by causing plaintiffs to file disparate suits to protect their claims. *Id.* Third, the "commencement of the action satisfied the purpose of the [statute of] limitation provision" by notifying defendants of the "number and generic identities of the potential plaintiffs" and the "subject matter and size" of the suit. *Id.* at 551, 555. And last, the Court noted that the amended Rule 23 (post-1966) was written to allow defendants to challenge class certification "as soon as practicable," *id.* at 548 (quoting Fed. R. Civ. P. 23(c)(1)), and so the Court used this tolling rule to prevent resulting injustice to plaintiffs from protection of defendants, *id.* at 546–48; *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017). Importantly, the Court has described *American Pipe* tolling as based on the "traditional equitable power[]" of tolling, even as *American Pipe* "did not consider the criteria of the formal doctrine of equitable tolling in any direct manner." *Id.*

Analogous circumstances arise here. Potential plaintiffs benefit from a FLSA collective action yet hold no responsibility to join it until they receive notice. The collective action remedy Congress has provided channels litigation through one case, which avoids a "multiplicity of activity" as was a key goal of Rule 23, *Am. Pipe*, 414 U.S. at 551, and the FLSA, *Hoffmann-*

*La Roche*, 493 U.S. at 172.   *See also id.* at 170 (noting goal of "efficient resolution in one proceeding").   The main purpose of the statute of limitations is met when defendants are informed of the claims by the initial plaintiffs and therefore glean the "generic identities" of the plaintiffs and the "subject matter and size" of the litigation. *Am. Pipe*, 414 U.S. at 555.  And last, our newly announced standard protects defendants just like the 1966 Rule 23 amendments, but it creates the need to toll the statute of limitations.  As a result, something akin to the *American Pipe* rule may be well suited to the circumstances of this case.

Equitable considerations support the use of tolling for FLSA collective actions.  "Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989)).  "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle." *McQuiggin v. Perkins*, 569 U.S. 383, 410 (2013) (Scalia, J., dissenting) (quoting *Young v. United States*, 535 U.S. 43, 49–50 (2002)); *see also Holland v. Florida*, 560 U.S. 631, 645 (2010).  For example, in *Young*, the U.S. Internal Revenue Service sought to collect funds beyond its three-year claim period.  535 U.S. at 44.  But the Young family had filed and withdrawn a bankruptcy petition, which temporarily blocked the IRS's collection.  *Id.* at 46.  Justice Scalia, writing for a unanimous Court, explained that Congress drafted the statute "assuming that bankruptcy courts will use their inherent equitable powers to toll the federal limitations periods within the Code." *Id.* at 52.  Accordingly, the Court tolled the three-year period, recognizing that, consistent with a textualist approach, statute-of-limitations defenses are subject to equitable tolling and equitable estoppel.  *See* Gregory E. Maggs, *Estoppel and Textualism*, 54 AM. J. COMP. L. 167, 181 (2006) ("[W]hen a legislature passes a new act, it assumes that the act will fit into the existing legal system."); *see also Boechler, P.C. v. Comm'r of Int. Rev.*, 142 S. Ct. 1493, 1500–01 (2022) (holding that an IRS statutory deadline was subject to equitable tolling based on the longstanding presumption favoring equitable tolling, the statute's failure to "expressly prohibit equitable tolling," the short limitations period, and the statute's goal of protecting taxpayers).

Tolling the FLSA limitations period is familiar to federal courts. This is especially true in jurisdictions that have heightened the bar for determining whether potential plaintiffs are "similarly situated" with party plaintiffs. For example, in *Gomez v. Glob. Precision Sys., LLC*, 2022 U.S. Dist. LEXIS 191403, No. EP-21-CV-00269-DCG (W.D. Tex. Oct. 20, 2022), the court explained that "delays inherent" in the *Swales* process could diminish FLSA collective actions "to the point of being unfeasible." *Id.* at *28. Therefore, it tolled the two-year statute of limitations. *Id.*

Similarly, in *Betts v. Cent. Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072 (S.D. Ohio 2019), the court tolled the FLSA statute of limitations for 292 days, noting that "when the facts indicate a delay beyond the movants' control, many courts find equitable tolling to be an appropriate remedy." *Id.* at 1077 (citation omitted). "[I]n situations where court delay has time-barred a sizeable number of potential plaintiffs, many courts find that the delay alone warrants equitable tolling and decline to analyze the typical equitable tolling factors." *Id.*

Similar circumstances seem to arise in the present case. It therefore would be appropriate for the district court on remand to consider the application of equitable tolling.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part, and concurring in Judge Bush's opinion. Today the court announces a new standard that district courts must apply before sending notice in litigation under the Fair Labor Standards Act ("FLSA"), thus departing from the "fairly lenient" standard long used in this circuit and nationwide. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Because the majority's novel approach has the potential to undercut both the FLSA's "broad remedial goal" and the role of district courts as case managers, I respectfully dissent. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). However, I join in the majority's rejection of the Fifth Circuit's approach to notice as set out in *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 440 (5th Cir. 2021); its rejection of the term "certification" in FLSA actions; and its holding that, before reaching the merits of an FLSA claim, courts should consider arbitration agreements and statute-of-limitations defenses only as they pertain to whether potential plaintiffs are similarly situated, *cf. JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).

### I.

The FLSA "was designed 'to extend the frontiers of social progress' by 'insuring to all . . . working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1934). "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee," some workers "required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Accordingly, the FLSA's "prime purpose" is "to aid the unprotected, unorganized, and lowest paid of the nation's working population." *Id.* at 707 n.18.

To serve this purpose, the statute enshrines rights to a minimum wage and overtime pay, 29 U.S.C. §§ 206-07, and empowers workers to enforce these rights through litigation as a collective, *id.* § 216(b), providing "the advantage of lower individual costs to vindicate rights by the pooling of resources," *Hoffmann-La Roche*, 493 U.S. at 170. Congress has since used the same collective mechanism to protect workers from age and gender discrimination. 29 U.S.C. § 626(b) (enforcing Age Discrimination in Employment Act of 1967 ("ADEA")); *id.* § 206(d) (enforcing Equal Pay Act of 1963 ("EPA")). Naturally, this mechanism involves a case-management role for district courts, and in reference to that role, the Supreme Court has specifically declared that the FLSA's "broad remedial goal . . . should be enforced to the full extent of its terms."[1] *Hoffmann-La Roche*, 493 U.S. at 173.

District courts commonly follow a two-step framework—sometimes called the *Lusardi* approach, based on a District of New Jersey decision[2]—to oversee FLSA cases. *White*, 699 F.3d at 877. The majority suggests that this framework may be the product of arbitrary, shallow analysis. *See* Maj. Op. at 3 (suggesting courts may have independently arrived at this framework or fallen prey to "anchoring bias" and/or the "primacy effect"). But the framework reflects years of dialogue among district and appellate courts leading up to *Hoffmann-La Roche* and an embrace of the approach following that decision. *See, e.g.*, *Pirrone v. N. Hotel Assocs.*, 108 F.R.D. 78, 80-82 (E.D. Pa. 1985) (reviewing debate setting the stage for *Hoffmann-La Roche*); *Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (demonstrating debate following *Hoffmann-La Roche*). And *Hoffmann-La Roche*, the only Supreme Court decision on point, affirmed a decision that followed *Lusardi*, so it makes sense that courts have adopted this framework.[3] Moreover, although *Hoffmann-La Roche* left courts with discretion, courts have found the framework helpful because "the proper means of managing a collective action—the

---

[1]Although *Hoffmann-La Roche* was an ADEA case, this command comes from the Supreme Court's discussion of the FLSA. The Court rejected the petitioner's argument that court-facilitated notice "would thwart Congress' intention to relieve employers from the burden of multiparty actions," finding on the contrary that, when Congress modified the FLSA by enacting the Portal-to-Portal Act of 1947, it preserved "the 'similarly situated' language for collective actions." 493 U.S. at 173.

[2]*Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 90 (D.N.J. 1983).

[3]*See Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J.), *aff'd in part*, *appeal dismissed in part sub nom. Sperling v. Hoffman-La Roche Inc.*, 862 F.2d 439 (3d Cir. 1988), *aff'd and remanded sub nom. Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely a question of 'case management,'" and "as a general rule, the two-step process has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose premise is not borne out by the record." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (finding "sensible" a two-step approach requiring only a "modest factual showing" at first step); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 129 (11th Cir. 2001) (calling framework "an effective tool" and "suggest[ing] that district courts" use it). And although we have not directly opined on its merits, this court has repeatedly described the framework as the standard approach. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017).[4]

A lenient notice standard serves plaintiffs, defendants, and judicial economy. It is essential that courts move quickly under the FLSA because the statute of limitations is not automatically tolled at filing for similarly situated plaintiffs who have yet to opt in. *See* 29 U.S.C. § 255(a) (requiring claim within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation); *cf. Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (tolling claims for Rule 23 class members). I thus agree with Judge Bush that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs. *See* Conc. Op. at 11. Further, early notice enables district courts to "ascertain[] the contours of the action at the outset"; "avoid[] a multiplicity of duplicative suits"; set deadlines for opt-in consents and other decisions "to expedite disposition of the action"; and prevent "abuse" of the collective mechanism by plaintiffs, such as through "misleading" communications. *See Hoffmann-La Roche*, 493 U.S. at 171-72.

---

[4]*See also Taylor v. Pilot Corp.*, 697 F. App'x 854, 85 (6th Cir. 2017); *White*, 699 F.3d at 877; *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012); *In re HCR ManorCare, Inc.*, No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

## II.

Turning to the majority's notice analysis, I agree on two points but disagree with the court's new standard. I agree it is best to avoid the terms "certification" and "decertification," given that sending notice does not create a class. *See* Maj. Op. at 5. I note, however, that the advantages of a two-step framework remain, and today's ruling still supports a two-step approach by contemplating notice before a final similarity determination. And I join in the rejection of the Fifth Circuit's approach in *Swales* both for the majority's reasons, *see* Maj. Op. at 6-7, and because I do not think *Hoffmann-La Roche* is as concerned with overbroad notice as *Swales* suggests, as discussed below. My disagreement is with the majority's rejection of the existing lenient standard for notice. *See* Maj. Op. at 7. Although the majority's new standard is not unreasonable and may have little effect in some cases, it is unnecessary. The majority is concerned that a lenient notice standard puts district courts in the role of soliciting claims, Maj. Op. at 8, and puts employers under undue pressure to settle FLSA cases, Maj. Op. at 3. As a solution, the majority presents its "strong likelihood" standard. Maj. Op. at 8. I disagree with this reasoning and thus dissent.

First, as a baseline premise, I am not convinced that employers face the settlement crisis that Defendants or amicus U.S. Chamber of Commerce describe. *See* First Br. 7-8; Third Br. 21-24; Br. of Amicus U.S. Chamber of Commerce 2-5, 23-25. It is no surprise that employers favor weakening the collective-action mechanism in a statute Congress designed to protect workers. Thus, although I am mindful of the FLSA's potential for abuse, as was the Court in *Hoffmann-La Roche*, 493 U.S. at 486, I am wary of mistaking the FLSA's remedial success for a problem, *cf. Shelby County v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting) ("Throwing out preclearance when it has worked and is continuing to work to stop discriminatory changes is like throwing away your umbrella in a rainstorm because you are not getting wet."). Since *Hoffmann-La Roche* and *Lusardi* in the 1980s, Congress has updated the FLSA in 1996, 2007, and 2010; not once has it changed the collective-action mechanism.[5]

---

[5]*See* Small Business Job Protection Act of 1996, Pub. L. No. 104-188, §§ 2104-05, 110 Stat. 1755, 1928-30 (increasing minimum wage and changing rules for computer professionals, tipped employees, and opportunity wages); Fair Minimum Wage Act of 2007, Pub. L. No. 110-28, §§ 8102-03, 121 Stat. 112, 188 (increasing minimum

And to be clear, the lenient standard is not without teeth, as shown by district courts applying it in this circuit. *See, e.g.*, *Shell v. Pie Kingz, LLC*, 415 F. Supp. 3d 769, 772 (N.D. Ohio 2019) ("[C]onditional certification is neither automatic nor presumed."); *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011) ("[T]he standard . . . is lenient, it is not non-existent."). For example, courts deny notice where plaintiffs make only a thin showing. *See, e.g.*, *Powers v. Blessed HomeCare, LLC*, No. 3:18-CV-01029, 2019 WL 4450514, at *3 (M.D. Tenn. Sept. 17, 2019) ("[Plaintiff] has not alleged facts, as opposed to conclusory allegations, to show that the policy she contends was applied to her was either company-wide or affected other employees. She has not supported her 'awareness' of the situations of other caregivers with anything more than the statement itself."); *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *10 (E.D. Mich. Mar. 23, 2012) ("[Plaintiff] provides nothing more than mere allegations that she and others like her were improperly classified as FLSA-exempt. These allegations lack factual support (such as the written policies and emails that support a class of hourly, non-exempt plaintiffs) and are not enough to meet her burden at this stage."). And courts deny notice where plaintiffs seek notice beyond their own job site but demonstrate no knowledge or likelihood that a policy applies elsewhere. *Lucyk v. Materion Brush, Inc.*, No. 3:20-CV-2340, 2022 WL 3043020, at *3 (N.D. Ohio Aug. 2, 2022) (collecting cases).

Defendants' data fails to reflect a problem and is consistent with a standard that is lenient yet real. They cite historically high rates of FLSA litigation in the mid-2010s, but filings have declined each year from 2016 to 2021. Third Br. 4-5 (citing Seyfarth, 18th Annual Workplace Class Action Litigation Report 9-10 (JD Supra 2022), https://www.jdsupra.com/legalnews/seyfarth-s-2022-annual-workplace-class-1036512). They flag the 81% success rate in 2021 for notice motions, but that confirms *Lusardi* has teeth: Plaintiffs lost around 20% of such motions. *See id.* This success rate is likely even lower accounting for frequent instances in which, in the same order, courts grant notice based on some parameters but deny based on others. *See, e.g.*, *Bauer v. Transtar Indus., Inc.*, No. 1:15 CV 2602, 2016 WL 1408830, at *3 (N.D. Ohio Apr. 11, 2016); *Shipes*, 2012 WL 995362, at *6, *9.

wage); Affordable Care Act, Pub. L. No. 111-148, § 4207, 124 Stat. 119, 577-578 (2010) (adding protections for breaks for nursing mothers).

And this rate seems reasonable considering the success rate of 72% for certification of employment-discrimination class actions in 2021. *Id.* Rule 23 certification, which results in a legally defined class, is more demanding than FLSA notice, the only consequence of which is to notify potential plaintiffs. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Additionally, it is not inherently significant or concerning that most FLSA cases settle after notification; litigation in general commonly settles between the early and final stages of discovery.

Second, the majority is overly concerned with the perceived pressure that defendants are under post-notice. *See* Maj. Op. at 2-3. As the district court in *Hoffmann-LaRoche* explained, "nothing would appear to prevent the court from modifying or reversing a decision on 'similar situations' at a later time, as new facts emerge." 118 F.R.D. at 407. The majority itself emphasizes that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees," Maj. Op. at 6 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)), and the majority's rejection of the term "certification" makes this point even clearer, *see* Maj. Op. at 5. Although the Supreme Court has recognized a risk of in-terrorem settlements associated with Rule 23 class actions, *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 474 (2013), those concerns are lessened in the FLSA context because defendants are very likely to have superior information about pay and hours compared with plaintiffs and so are more likely prepared to make informed settlement decisions, *see* § 29 U.S.C. 211(c) (requiring recordkeeping by employers).

Third, the majority overstates the need to avoid overbroad notice under *Hoffmann-La Roche*, *see* Maj. Op. at 8, which said nothing about a problem with workers receiving notice about litigation for which they are ineligible, 493 U.S. at 174. In fact, the Supreme Court explained that "early" involvement in the notice process prevents abuse of the collective structure; and when the Court warned that "courts must be scrupulous to respect judicial neutrality," it noted only that "[t]o that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* Thus, *Hoffmann-La Roche*'s neutrality concern appears to be with the notice message, not notice itself. Further, as the

majority acknowledges, the Court referred to "potential plaintiffs," and the district court below had found that "notice to absent class members need not await a conclusive finding of 'similar situations,'" so the Court seemed to foresee—and even endorse—overbroad notice.  Maj. Op. at 6 (first quoting 493 U.S. at 169, then quoting 118 F.R.D. at 406).

Additionally, even under loose notice standards, notice is sent concerning only a pre-defined collective and must avoid endorsement of the merits; it does not go out with a list of hypothetical claims that others might bring, and certainly does not encourage plaintiffs to join. True, notice may inspire employees who are ultimately determined not to be similarly situated to pursue their own litigation, but employers are already required to conspicuously post information explaining the FLSA, 29 C.F.R. § 516.4, and workers and lawyers have First Amendment rights to share information about joining FLSA litigation, *Sperling v. Hoffman-La Roche, Inc.*, 862 F.2d 439, 447 (3d Cir. 1988) (citing *Shapero v. Ky. Bar Assoc.*, 486 U.S. 466 (1988)); *cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (limiting authority of district courts to restrict speech in class actions).  As the Supreme Court recognized, court-approved notice tends to limit the risk of fomenting litigation.  *Hoffmann-La Roche*, 493 U.S. at 486-87.

Fourth, the majority's approach constrains district courts, the experts on managing cases. The majority implies that the Supreme Court did something odd in *Hoffmann-La Roche* by finding "an implied judicial power" enabling district courts to facilitate notice of litigation to potential plaintiffs.  *See* Maj. Op. at 2 ("Normally plaintiffs come to the courts, rather than vice versa.").  On the contrary, the Court observed that, in FLSA actions, district courts must juggle complex considerations, including discovery, formal and informal communications that will occur with potential plaintiffs, and the desire for efficient resolution of all claims through a single action, and thus "court involvement in the notice process is inevitable."  493 U.S. at 171. "One of the most significant insights that skilled trial judges have gained . . . is the wisdom and necessity for early judicial intervention in the management of litigation."  *Id.*  I fear the majority's new approach will thwart district courts in executing key case-management functions, such as "ascertain[ing] the contours of the action at the outset" and "avoid[ing] a multiplicity of duplicative suits."  *See id.*

Fifth, litigation has more appropriate safeguards to ensure that settlements occur on fair terms. Before any notice or discovery, defendants may test plaintiffs' allegations under the Supreme Court's plausibility standard, which was specifically heightened to prevent settlements based on threadbare claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007). And to succeed on the merits, opt-in plaintiffs must ultimately be similarly situated and prove an FLSA violation. If uncertainty under the similarity standard advantages plaintiffs, that problem is better addressed through clarifying the standard, rather than delaying notice. *Cf. Campbell*, 903 F.3d at 1090 (preserving two-step notice process with lenient notice but clarifying definition of "similarly situated"). The former approach maximizes transparency and positions plaintiffs and defendants to make well-informed decisions; the latter keeps potential plaintiffs in the dark while the statute of limitations runs, and district courts are unnecessarily impeded in exercising their case-management functions.

Despite my disagreement, I appreciate the majority's desire to clarify the notice standard. As I said, the new standard is not unreasonable but unnecessary. As I understand the new standard, although the showing for notice is no longer "lenient" or "modest," this does not mean the standard is necessarily higher than all prior applications of the earlier standard, which has been applied unevenly, as Defendants point out in their briefing. *Compare, e.g.*, *Roberts v. J.R. Eng'g, Inc.*, No. 5:19-CV-00110, 2019 WL 5653340, at *7 (N.D. Ohio Oct. 31, 2019) (identifying cases where notification granted based on minimal showing beyond affidavits that rehash complaint's conclusory allegations), *with Powers*, 2019 WL 4450514, at *3 (requiring more than conclusory allegations in affidavit); *see also* First Br. 15-16. As the majority explains, the new standard falls between the showing needed "to create a genuine issue of fact" and "the one necessary to show a preponderance." Maj. Op. at 8. And the new standard uses only the "strong likelihood" standard for a preliminary injunction, with the result that the necessary showing is far less demanding than for a preliminary injunction itself. *Cf. Am. C.L. Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (requiring consideration of "likelihood of success on the merits," "whether . . . movant would suffer irreparable injury," "whether . . . injunction would cause substantial harm to others," and the "public interest").

Lastly, I remind district courts that today's ruling addresses how much a plaintiff must show to satisfy a district court that other employees exist who, upon further inquiry, will be found to be similarly situated to the plaintiff; it does not address the underlying threshold for FLSA similarity, which remains the same. *See O'Brien*, 575 F.3d at 584 (contrasting relatively low FLSA similarity standard with Rule 23 standard); *see also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 533, 546-47 (6th Cir. 2006) ("similar, not identical" (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). And district courts should avoid abusing their discretion by "refusing to allow notice to putative collective action members, or in [making a final similarity decision] too early or too late." *Campbell*, 903 F.3d at 1110 (citing *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982)); *see also Hoffmann La-Roche*, 493 U.S. at 170 (finding district court "was correct to permit discovery of . . . names and addresses" because this "was relevant to the subject matter of the action and . . . there were no grounds to limit the discovery under the facts and circumstances of [the] case"); *Hoffman-La Roche*, 862 F.2d at 447 (observing First Amendment interests at stake in FLSA litigation).

## III.

Lastly, I concur in the majority's determination that, before deciding the merits of any FLSA claims, district courts should consider arbitration agreements and statute-of-limitations defenses only in determining whether plaintiffs are similarly situated. *See* Maj. Op. at 6. Although I would analyze these issues under a more lenient standard for notice, I agree with the majority's reasoning.

## IV.

For the reasons explained, I CONCUR in part and DISSENT in part.